COFFEY KAYE MYERS & OLLEY
BY:   ROBERT E. MYERS, ESQUIRE
       LAWRENCE A. KATZ, ESQUIRE
Suite 718, Two Bala Plaza
Bala Cynwyd, PA  19004
(610) 668-9800
(610) 667-3352 (Fax)                                              Attorneys For:  Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERMAINE JENKINS, | CIVIL ACTION |
| Plaintiff | |
| vs. | |
| NJ TRANSIT RAIL OPERATIONS, INC., | JURY TRIAL DEMANDED |
| Defendant | NO. |

## COMPLAINT

1.     The plaintiff, Jermaine Jenkins, brings this action against the defendant, New Jersey Transit Rail Operations, Inc. for violations of the *Federal Rail Safety Act*, 49 U.S.C. §20109.

### JURISDICTION

2.     This court has subject matter jurisdiction in this case pursuant to the *Federal Railroad Safety Act*, 49 U.S.C. §20109(d) (3) (FRSA).

### PARTIES

3.     The plaintiff, Jermaine Jenkins, is a citizen and resident of the Commonwealth of Pennsylvania, residing therein at 444 Main Street, Tullytown, Pennsylvania 19007.

1

4. The defendant, New Jersey Transit Rail Operations, Inc. (NJTRO), is a corporation duly organized and existing under and by virtue of the laws of the state of New Jersey and does business in the Eastern District of Pennsylvania.

5. At all times material hereto, the defendant operated trains in, had employees working in, and did business in the Eastern District of Pennsylvania.

## FACTS

6. During all times mentioned herein, the defendant railroad carrier engaged in interstate commerce by providing railroad transportation between several of the states of the United States, including but not limited to, the Commonwealth of Pennsylvania, the State of New Jersey, and the State of New York.

7. At the time of the defendant's FRSA violations, the plaintiff was employed by the defendant railroad as a conductor/brakeman, and qualified as an employee within the meaning of 49 U.S.C. §20109.

8. All of the averments set forth in the foregoing paragraphs are incorporated in the following Causes of Action as though set forth therein at length.

## COUNT 1: FRSA CAUSE OF ACTION –I

9. Plaintiff has been employed by NJT since January 30, 1995.

10. Plaintiff is a qualified conductor/brakeman, works at many locations, but primarily at NJT's Morrisville, Pennsylvania Yard.

11. Mr. Joseph Burkert is NJT's Yardmaster at the Morrisville Yard.

12. During plaintiff's NJT employment, he was under the supervision of Mr. Burkert.

13. During the course of his railroad employment, and particularly while employed at the Morrisville Yard, Mr. Burkert instructed Mr. Jenkins and his co-workers to engage in train

2

movements and other employment activities, that violated regulations of the Federal Railroad Administration, NORAC Rules and NJT's own policies, rules and procedures.

14. Amongst the illegal movements that Mr. Burkert ordered the plaintiff and his co-workers to perform, was to permit equipment to foul a track.

15. According to his rights under the Federal Rail Safety Act and other federal statutes and regulations, Mr. Jenkins refused to perform the illegal movements and filed one or more Good Faith Challenges.

16. After plaintiff made these Good Faith Challenges, NJT ordered a meeting between Mr. Jenkins and the other employees, as well as supervisors, Mr. Burkert, Assistant Superintendent Patrick Martin, Superintendent Hicks and other NJT Officers and Supervisors.

17. At the aforementioned meeting, Mr. Burkert and the other NJT Officers and Supervisors informed the employees that the employees' insistence, that all FRA, NORAC and NJT regulations and rules be followed was disruptive to the railroad, and was making it difficult to have the work performed at a level of productivity that "the bosses desired and required." The employees were further instructed that they were to no longer further impede railroad operations and productivity by raising the various regulations, rules, policies and procedures.

18. Thereafter, plaintiff and other employees who were present at the meeting requested that the General Chairman of their Union file a grievance against Mr. Burkert, due to his frequent orders to violate FRA, NORAC and NJT rules and regulations.

19. The request that grievance be filed was in violation of the instructions given to the employees by Mr. Burkert, Mr. Martin, Mr.Hicks and the other NJT Officers and Supervisors, that they were to no longer insist that rules and regulations be followed, and that they were to no longer impede railroad operations and productivity by raising FRA, NORAC and NJT rules and regulations.

20. A copy of the request for a grievance was provided to Mr. Joseph Burkert, Mr. Patrick Martin, Mr. Robert Hicks, and numerous other NJT Officers, Managers and Supervisors.

21. On or about April 30, 2015, plaintiff was informed that he was being charged with insubordination in the violation of radio rules, and that violation occurred on April 23, 2015, just days after the meeting between the NJT Morrisville Yard employees and Supervisors.

22. The plaintiff was charged with insubordination and violation of radio rules, even though no such violations ever occurred. Furthermore, even had the alleged conduct actually occurred, these charges had been brought against the plaintiff to retaliate against his making a Good Faith Challenge to the order to foul the tracks, participating in a grievance to alert superiors to Mr. Burkert's illegal actions, and for his refusal to acquiesce to Messrs. Hicks' and Martin's orders that he and his co-workers stop insisting on compliance with FRA, NORAC and NJT rules and regulations.

23. The aforementioned charges brought against the plaintiff were not only intended to discriminate against him, but to intimidate him into obeying illegal orders, not making further Good Faith Challenges, and not reporting these illegal orders to NJT Officers and Supervisors.

24. The conduct of NJT's Officers, Managers and Supervisors is beyond all levels of common decency; are outrageous; was intended to willfully cause extreme distress to the plaintiff, and constitute outright, willful and grossly careless actions, within which there is a wonton disregard and reckless indifference for the rights and welfare of the plaintiff.

25. The defendant railroad had knowledge of all of the protected activities referenced above.

26. The defendant railroad took adverse or unfavorable actions, and engaged in a pattern of retaliatory behavior, against the plaintiff in whole or in part due to his protected activities when it

4

engaged in the aforementioned retaliation and discipline.

27. In so doing the defendant railroad acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

28. On October 8, 2015, the plaintiff filed a FRSA complaint with the Secretary of Labor's Region III OSHA Whistleblower Office. This was filed within 180 days from the date the plaintiff became aware of the defendant railroad's intent to take adverse or unfavorable personnel action against him.

29. The Region III OSHA Whistleblower Office commenced its investigation, and the plaintiff fully cooperated with OSHA's investigation. However, OSHA did not issue a final decision within 210 days after the filing of the FRSA complaint. The delay was not due to any bad faith on the part of the plaintiff.

30. On June 15, 2016, Plaintiff filed a *Notice of Intent to File Original Action In United States District Court* with the OSHA Region III Whistleblower Office.

31. More than 15 days have elapsed since Plaintiff filed his Notice of Intent.

32. Plaintiff has exhausted all administrative remedies as required by statute and/or common law.

33. Pursuant to 49 U.S.C. §20109(d)(3) of the FRSA, the plaintiff has a statutory right to bring an original action in the United States District Court for a jury trial regarding the railroad's violation of the FRSA.

34. Pursuant to the FRSA, 49 U.S.C. §20109(d)(3), the plaintiff is now bringing this original action in law and equity for de novo review by the United States District Court for the Eastern District of Pennsylvania, which court has jurisdiction over this FRSA action without regard to the amount in controversy.

**WHEREFORE,** in order to encourage employees to freely report all injuries without fear of any retaliation, and further to encourage all employees to freely report unsafe conditions and violations of federal statutes and regulations, thereby ensuring the Federal Railroad Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area in our nation's railroad operations, the plaintiff demands a judgment under the FRSA for all relief necessary to make him whole, including but not limited to:

    a. expungement of all references to the disciplinary actions set forth above;

    b. compensatory damages for mental anguish and emotional distress due to the defendant's conduct;

    c. compensatory damages for economic losses due to the defendants' conduct;

    d. the statutory maximum of punitive damages;

    e. special damages for all litigation costs including expert witness' fees and attorneys' fee.

## COUNT II: FRSA CAUSE OF ACTION – II

35. Plaintiff has been employed by NJT since January 30, 1995.

36. Plaintiff is a qualified conductor/brakeman who primarily works at NJTRO's Morrisville, Pennsylvania Yard.

37. On or about October 21, 2015, the plaintiff engaged in a train movement during which time a derailment occurred allegedly as a result of his failure to properly throw a switch.

38. On or about November 5, 2015, plaintiff was disciplined. Specifically, plaintiff was suspended for thirty (30) days, and there was a thirty (30) revocation of his Conductor Certification. Although plaintiff consented to this punishment, and waived his rights to a hearing by NJT officials, he only did so because he knew that he had become a target for NJT officers, management and

supervisors, and that a formal hearing could result in his termination.

39. The thirty (30) days discipline and thirty (30) days revocation of his Conductor's Certification was significantly more severe punishment than other employees who committed similar infractions received.

40. Plaintiff received disproportionately severe punishment compared to other employees committing similar offenses. In fact, plaintiff's punishment was twice as severe as the punishment of his co-worker, who was also involved in the derailment.

41. At the time that plaintiff was disciplined on November 5, 2015, as a result of the October 21, 2015 incident, NJT, its officers, managers and supervisors were not only aware of the protected activities described more fully in Count I, but were also aware that on October 8, 2015, plaintiff filed a complaint with OSHA for NJT's violation of the FRSA's whistleblower/retaliation provisions.

42. The defendant railroad had knowledge of all of the protected activities referenced above.

43. The defendant railroad took adverse or unfavorable actions, and engaged in a pattern of retaliatory behavior, against the plaintiff in whole or in part due to his protected activities when it engaged in the aforementioned retaliation and discipline.

44. In so doing, the defendant railroad acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

45. On January 28, 2016, the plaintiff filed a FRSA complaint with the Secretary of Labor's Region III OSHA Whistleblower Office. This was filed within 180 days from the date the plaintiff became aware of the defendant railroad's intent to take adverse or unfavorable personnel action against him.

46. The Region III OSHA Whistleblower Office commenced its investigation, and the plaintiff fully cooperated with OSHA's investigation. However, OSHA did not issue a final decision within 210 days after the filing of the FRSA complaint. The delay was not due to any bad faith on the part of the plaintiff.

47. On June 15, 2016, Plaintiff filed a *Notice of Intent to File Original Action In United States District Court* with the OSHA Region III Whistleblower Office.

48. More than 15 days have elapsed since Plaintiff filed his Notice of Intent.

49. Plaintiff has exhausted all administrative remedies as required by statute and/or common law.

50. Pursuant to 49 U.S.C. §20109(d)(3) of the FRSA, the plaintiff has a statutory right to bring an original action in the United States District Court for a jury trial regarding the railroad's violation of the FRSA.

51. Pursuant to the FRSA, 49 U.S.C.§20109(d)(3), the plaintiff is now bringing this original action in law and equity for de novo review by the United States District Court for the Eastern District of Pennsylvania, which court has jurisdiction over this FRSA action without regard to the amount in controversy.

**WHEREFORE,** in order to encourage employees to freely report all injuries without fear of any retaliation, and further to encourage all employees to freely report unsafe conditions and violations of federal statutes and regulations, thereby ensuring the Federal Railroad Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area in our nation's railroad operations, the plaintiff demands a judgment under the FRSA for all relief necessary to make him whole, including but not limited to:

    f. expungement of all references to the disciplinary actions set forth above;

8

g. compensatory damages for mental anguish and emotional distress due to the defendant's conduct;

h. compensatory damages for economic losses due to the defendants' conduct;

i. the statutory maximum of punitive damages;

j. special damages for all litigation costs including expert witness' fees and attorneys' fee.

                                                   COFFEY KAYE MYERS & OLLEY

BY: _____
ROBERT E. MYERS
LAWRENCE A. KATZ
Counsel for Plaintiff

Date: 3/13/17